Cornelius vs. Kessel.

58   237
76   685

## CORNELIUS vs. KESSEL.

*September 6 — September 25, 1883.*

PUBLIC LANDS. *(1, 2) Rights of purchaser from U. S. before issuance of patent.*

EJECTMENT: COUNTERCLAIM. *(3) What is the "subject of the action." (4) When trial of legal issue unnecessary.*

1. After lands of the United States, which were subject to entry, have been sold and paid for, the entry cannot be canceled. And the rights of the purchaser are the same whether he has received the register's final certificate or only the receiver's receipt.

2. An entry of lands, of which a portion only were subject to entry, cannot be canceled as to that portion if the purchaser elects to retain the same.

3. In ejectment the "subject of the action" (R. S., sec. 2656) is the land in controversy, and facts showing that the equitable title is in the defendant and that the plaintiff's legal title was wrongfully

obtained and should inure to the defendant, are pleadable as a counterclaim.

4. The trial of the issue upon an equitable counterclaim in ejectment having resulted in a finding that the plaintiff's legal title could not prevail against the equitable title of the defendant, it was not error to refuse the plaintiff's demand for a trial by jury of the issue raised by a denial of his legal title.

APPEAL from the Circuit Court for *Sheboygan* County.

Ejectment. The cause was before this court on a former appeal, and is reported in 53 Wis., 395. On the second trial, upon the same pleadings, when the case was called, the defendant demanded a separate trial by the court of her counterclaim, which was granted against the objection of plaintiff that the facts alleged as a counterclaim did not constitute a cause of action. The defendant, in support of the counterclaim, introduced in evidence a duly certified copy of the will of her husband, Jacob Kessel, and of the probate thereof. By such will the testator devised to the defendant all of his real property, for her life. She also introduced in evidence the record of the receiver's receipt showing payment by Davidson, in 1856, for the forty acres in question, together with other lands, and sundry mesne conveyances by which the title became vested in her husband; also a certificate of the register showing the entry of the land by Puffer in 1876, and that the same was patented to him in 1877, and mesne conveyances by which the title of Puffer became vested in the plaintiff; also an exemplification duly certified by the commissioner of the general land office, of a letter, dated June 3, 1879, from such commissioner to the register and receiver at Menasha, Wis., stating the facts relative to the Davidson and Puffer entries and the cancellation of the former, and that the commissioner has reinstated the Davidson entry as to the land in question, and directing that such reinstatement be noted upon the records of the Menasha office.

After the close of the testimony upon the counterclaim the plaintiff demanded a trial by jury of the legal issue in the case, which was refused. The court found as facts, in substance, that in 1856 the land in question was subject to entry and purchase, and that Davidson then made cash entry and purchase thereof, together with another tract of land, and received the usual receiver's receipt therefor; that by sundry mesne conveyances the land passed to the defendant's husband in 1869, and that it was in the possession continuously of the grantees named in such conveyances; that the defendant's husband died July 29, 1876, having been in the possession of the land since the conveyance thereof to him, and by his will, which was duly admitted to probate September 11, 1876, the defendant was invested with a life estate in all his real estate, and has at all times since his death been in possession of the land in question; that on December 6, 1876, a certificate of the entry of said land was issued to one Puffer, and on June 4, 1877, the same was patented to him, and that by mesne conveyances the title of Puffer has passed to the plaintiff; that on June 3, 1879, an order was made by the commissioner of the general land office, reciting, among other things, that the certificate of entry issued to Davidson was subsequently to its issue canceled by said office erroneously and without cause, and that such cancellation should only have been made as to the tract other than the one in question mentioned in said entry, and it was by said order directed that the entry of Davidson as to the tract here in question be reinstated.

As conclusions of law the court found that the purchase and entry by Davidson, and the certificate thereof issued to him, vested in him a valid and subsisting interest in the land in question, and the right to a patent, and the said tract was thereafter segregated from the public domain, not subject to other entry; that the purported cancellation of

his entry was void, and the same was properly reinstated; that the certificate of entry and patent to Puffer were without authority and void; that the defendant's testator was, at his decease, vested with all the rights acquired by Davidson, and that the defendant is now vested with the same for her life. From a judgment accordingly, in favor of the defendant, the plaintiff appealed.

*Conrad Krez,* for the appellant, contended, *inter alia,* that the counterclaim was insufficient because the facts, if stated in a complaint, would not constitute a cause of action. *Matteson v. Ellsworth,* 28 Wis., 254; *Resch v. Senn,* 31 id., 138. Only the holder of the legal title who is in possession can maintain an action to quiet title. R. S., sec. 3186; 20 Am. L. Reg., 561. The counterclaim shows that the legal title is in Puffer, or, if his patent is void, in the United States. *Bagnell v. Broderick,* 13 Pet., 436. The subject of the action is the plaintiff's title and the wrongful withholding of it by the defendant. The adverse title claimed is not connected with that subject, and is, therefore, not proper matter for a counterclaim, under sec. 2656, R. S.

*Wm. H. Seaman,* for the respondent, to the point that after the United States has sold, for cash, lands which were subject to entry, it holds only the naked legal title, and in trust for the purchaser, and that the vested interest of the purchaser cannot be divested by any subsequent act of the government officials, cited: *Carroll v. Safford,* 3 How., 441; *Stoddard v. Chambers,* 2 id., 284; *Frisbie v. Whitney,* 9 Wall., 187; *Yosemite Valley Case,* 15 id., 77; *Lytle v. Arkansas,* 9 How., 314; *O'Brien v. Perry,* 1 Black, 132; *Simmons v. Wagner,* 101 U. S., 260, and cases cited; *Smelting Co. v. Kemp,* 104 id., 636; *Steel v. Smelting Co.,* 106 id., 447; *Dillingham v. Fisher,* 5 Wis., 475; *Brill v. Stiles,* 35 Ill., 305; *Sillyman v. King,* 36 Iowa, 207; *Cady v. Eighmey,* 54 id., 615.

COLE, C. J. On the former appeal — 53 Wis., 403 — it was said the answer of the defendant showed strong equities to the land in controversy. The force of that remark was certainly not weakened by anything disclosed in the proofs on the second trial. The facts in the answer were fully established by the evidence, and it would seem almost a reproach upon the administration of justice if such a' meritorious defense should fail. It is not claimed that the entry of this forty by Davidson, in January, 1856, was in conflict with any state land-grant or prior sale. The land was then subject to entry; it was purchased by him and paid for. There was no fraud or mistake in the transaction; the receiver took the price of the land and gave his receipt therefor. These are facts which cannot be successfully controverted. All the rights and interests which Davidson acquired by this entry became vested in the defendant's testator, who had been in continuous possession of the premises some years before he died, and had made improvements thereon. It is true, there was included in Davidson's purchase, and in the receiver's receipt, another tract of eighty acres which the United States did not own, but which belonged to the state under the swamp-land grant. But as respects this forty the United States owned it and sold it for cash — parted with all its interests in it, except the mere naked legal title, which it held in trust for the purchaser or his assigns. We may well adopt, as regards this forty the language of Mr. Justice McLEAN in *Carroll v. Safford,* 3 How., 440, 460, and say: "When the land was purchased and paid for it was no longer the property of the United States, but of the purchaser. He held it for a final certificate, which could no more be canceled by the United States than a patent. It is true, if the land had been previously sold by the United States, or reserved from sale, the certificate or patent might be recalled by the United States, as having been issued through mistake. In this respect there is no difference between the certificate holder and the patentee."

The learned counsel for the plaintiff insisted there was a distinction between the case where the purchaser obtains the register's final certificate and where he merely holds the receiver's receipt. But both instruments stand upon the same footing. The purchaser's rights are founded on the contract of purchase and payment of money, and the statutes of this state have always given the same effect to both instruments as evidence of title (sec. 95, ch. 98, R. S. 1849; sec. 103, ch. 137, R. S. 1858; and sec. 4165, R. S. 1878); and there is no earthly reason that we perceive for making a distinction between them, so far as the rights of the purchaser are concerned. Such being the case, it is clear that the order of the commissioner of the general land office, made October 24, 1857, canceling the entry of this forty, was without authority in law and void. The commissioner had no authority whatever to cancel the entire entry because of a conflict as to one of the tracts embraced therein, without first giving the party in interest the right of election as to whether he desired to retain that forty, and no effect can be given to his order. At most, the cancellation could only affect the tract to which the government, by reason of a prior disposal, could give no title. It is not necessary for the defendant to invoke the aid of Commissioner Williamson's order, made June 3, 1879, reinstating this entry, because the original cancellation was void. The plaintiff's counsel claims that the commissioner had no jurisdiction to make the order of reinstatement, because the legal title had passed from the government by the patent issued to Puffer. It may be conceded that this position is correct, but still the defendant's rights may well rest on the original entry, which vested in Davidson the equitable title, with the right to receive the patent for the land.

The counsel for the plaintiff further insists that the defendant could not in this action have the benefit of the equitable defense set up in the counterclaim. We fail to

perceive any good reason why she cannot have the benefit of that defense. The subject of the action is the land in controversy. The defendant states facts in the counter-claim which show that the equitable title to the property has become vested in her during her natural life, with the right of possession; that the legal title which passed to Puffer by the patent was wrongfully obtained and should have gone to her testator. She asks that the court adjudge the entire title in her testator at his decease; in other words, that the legal title under the patent may inure to the benefit of the devisees under the will of Jacob Kessel. There is no doubt but that the defendant was entitled to such relief in this case. *Simmons v. Ogle*, 105 U. S., 271. Perhaps the judgment which was rendered on the equitable issue is equivalent to this. It was adjudged that the entry by and patent to Puffer were null and of no effect as a conveyance of the land; that the defendant's testator died vested with an equitable estate in the premises, and entitled to the possession thereof, and to a patent therefor from the United States assuring the legal title through the original purchaser, Davidson, to his devisees; that the defendant have and enjoy such interest and estate, with the possession, during her life. If there are any formal defects in this judgment there is nothing of which the plaintiff can complain. He cannot be prejudiced by the cancellation of the patent, because the legal title vested in him by that instrument must, under the circumstances, inure to the benefit of those who have the superior equity and right to it. The court might have adjudged that the legal title be vested in the devisees of Jacob Kessel, subject to the life estate of the defendant.

After the trial of the equitable issue, the plaintiff, by his counsel, demanded a trial by the jury of the legal issue. To this demand the court replied that it did not consider there was anything for a jury to try, and denied it. The plaintiff did not claim or pretend that he had any title to the prem-

ises, except such as he derived through the patent. If he claimed the premises through any other source, it was his duty to disclose his title to the court, so it might see there was something for a jury to try. It was certainly not the duty of the court to submit to a jury the sufficiency of a title founded on the patent, which the court had just adjudged was invalid and could not prevail as against the defendant. There was, therefore, no error on the part of the court in refusing a jury trial of the legal issue on the facts disclosed in the record.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.