## SMITH *v.* EWING and another.

### (*Circuit Court, D. Oregon.* June 1, 1885.)

1. CERTIFICATE OF PURCHASE UNDER PRE-EMPTION LAW.

   A certificate of purchase issued in due form, in favor of a pre-emptor, for land subject to entry under the pre-emption law, cannot be canceled or set aside by the land department for alleged fraud in obtaining it; but in such case the government must seek redress in the courts, where the matter may be heard and determined according to the law applicable to the rights of individuals in like circumstances.

2. INNOCENT PURCHASER.

   *Semble,* that a purchaser in good faith, and for a valuable consideration, from a pre-emptor of the land included in the latter's certificate of purchase takes the same purged of any fraud which might have been committed in obtaining said certificate.

Suit to Determine Estate in Real Property and for an Injunction.

*John J. Balleray* and *J. M. Bower*, for plaintiff.

*James F. Watson*, for defendants.

DEADY, J. This suit is brought by a citizen of Georgia, to obtain a decree enjoining the defendants, who are citizens of Oregon, from trespassing on certain lands situate in Umatilla county, Oregon, and that any claim they may have thereto may be declared null and void. The defendants answered separately, and the cause was heard on exceptions to the answer of the defendant Ewing for impertinence.

It appears from the bill that on August 20, 1881, Arthur Webb settled, as a pre-emptor under the laws of the United States, on and improved the S. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ and the N. $\frac{1}{2}$ of the S. E. $\frac{1}{4}$ of section 2, in township 2 N., of range 32 E. of the Wallamet meridian, and on the following day filed in the local land-office at La Grande his declaratory statement therefor; that on July 29, 1882, after due publication of notice thereof, Webb made his final proof of such settlement and improvement to the satisfaction of the register and receiver of said office, and paid for the land at the rate of $2.50 per acre, or $396.20 in all, for which he received from said receiver "a certificate of purchase and entry of said land as by law required," which on July 31, 1882, was duly recorded in the county clerk's office; that on the same day D. K. Smith purchased said land from said Webb, in good faith and for a valuable consideration, to-wit, $2,000; and took a conveyance thereof from said Webb, which was duly recorded on the same day; that on December 1, 1884, the plaintiff purchased said land from said Smith, subject to a mortgage thereon given to the American Mortgage Company of $1,000, in good faith and for valuable consideration, to-wit, $1,000, and received a conveyance thereof from said Smith, and is now the owner and in possession of the premises, which are valuable for agricultural purposes and reasonably worth $5,500; that on or about July 10, 1883, the defendant Ewing wrongfully entered on the premises and built a dwelling-house thereon, in which he has since and now resides, and cultivates about five acres thereof and cuts timber thereon; and that he denies the plaintiff's title and interest in said land, and disputes his possession thereof, and claims an estate or interest therein adverse to the plaintiff.

By his answer, the defendant Ewing admits that Webb erected a building on the premises, and filed a declaratory statement thereon and entered the same, as a pre-emptor, as alleged in the bill; but denies that the plaintiff, or those under whom he claims, were ever the owners of the premises, or that the plaintiff is in possession of the same; and alleges that on April 21, 1876, he, being duly entitled to the benefit of the pre-emption law, settled on the premises under said law and filed his declaratory statement thereon; and afterwards, on December 4, 1876, with the permission of the register and receiver, "duly changed" "said entry,"—meaning, I suppose, said "declaratory

statement;", that the settlement and entry of Webb was in "conflict" with that of Ewing's, as changed on December 4th; that soon after the entry of the premises by Webb, but when is not stated, the defendant applied to the register and receiver to contest "the claim" of the former to the land included in his "declaratory statement and pretended entry upon the grounds above stated;" that thereafter such proceedings were had on such application that a contest was ordered thereon by the commissioner of the general land-office, and a hearing had before the register and receiver on January 17, 1883, who thereupon decided that neither said Webb nor said Ewing had complied with the pre-emption law in the matter of residence, cultivation, and improvement, and recommended "the cancellation of the filings and entries of both of said parties by the commissioner;" that Webb appealed from said decision to the commissioner, who affirmed the same, and from there took the case to the secretary of the interior, where D. K. Smith, the grantor of the plaintiff, intervened for his rights as a purchaser from Webb, as alleged in the bill herein, and asked that a patent for the land included in the declaratory statement of the latter be issued to him, but the secretary denied said application, and on February 21, 1884, affirmed the decision of the commissioner, and that thereupon said filings and entries were canceled by said commissioner, and "all rights thereunder wholly annulled;" and that by reason of such contest and cancellation, the defendant became entitled under the law to enter said lands within 30 days from the date of said cancellation, and that he did within such period, to-wit, on March 17, 1884, apply to said land-office "to enter said tract as a homestead," which application was allowed; whereupon he "commenced to reside upon and cultivate and improve said land as a homestead," and has ever since continued to do the same.

The plaintiff excepts to so much of this answer as sets up the settlement and filing of Ewing on the premises in 1876, the contest thereabout with Webb in 1883, and the decisions thereon, and his subsequent entry of the land as a homestead, as impertinent. The ground on which this exception is based is that as soon as Webb entered the land at the local land-office, and received the certificate of purchase, it became his property; the legal title remaining in the vendor in trust for him until the patent should issue in due course of proceeding. That while any person interested may appear on the notice of final proof required by the act of March 3, 1879, (20 St. 472,) and contest the right of a settler to become a purchaser under the pre-emption law, and thereby prevent a certificate of purchase from being issued to such settler, or cause the same to be canceled on an appeal from the decision of the local land-office allowing the entry to be made, yet the government of the United States, having satisfied itself through its local agents, in the manner provided by law, that Webb was entitled, under the pre-emption law, to purchase the land, and having thereupon sold it to him, cannot institute a contest in

the land department between the purchaser and any one, else, or even itself, to set aside, cancel, or recall said certificate.

Section 2273 of the Revised Statutes gives the register and receiver the right to determine "all questions as to the right of pre-emption arising between different settlers" on "the same tract of land," saving the right of appeal to the commissioner and the secretary of the interior. But at the date of Webb's entry and this alleged contest, Ewing's claim to the premises under his filing in 1876 was forfeited for want of final proof and payment within 30 months thereafter. Section 2267, Rev. St. He was then a stranger to the proceeding, and without interest in or relation to the land. No question could arise between Webb and him, as settlers thereon, nor as to the right of either to pre-empt the same. By reason of his neglect to make his final proof and payment, the effect of Ewing's filing had ceased, and he had long lost his *status* as a claimant under the pre-emption law. Therefore this proceeding in the land department that resulted in the attempted cancellation of Webb's certificate must be regarded, not as a contest under section 2273 of the Revised Statutes between two settlers on the same tract of land, but as an *ex parte* proceeding, instituted by the commissioner for the purpose of canceling Webb's certificate, upon the suggestion of a stranger that it was fraudulently obtained. The fact that Webb saw proper to participate in it with a view of protecting his certificate, does not affect its character in this respect.

Has the commissioner any such power? It is not given to him in terms by any act of congress that I am aware of. His right to pass upon conflicting claims to land under the pre-emption law seems confined to cases that come before him on appeal from the decision of the register and receiver, in case of a contest between two or more settlers under such law. Doubtless the commissioner may also refuse to give effect to a certificate, and issue a patent thereon, when it appears from the face thereof, or the proof accompanying it, that it was issued contrary to law. But if the land is open to pre-emption, and the proof is formally sufficient, as that it is made by the oaths of the proper and prescribed number of witnesses to the necessary facts, the commissioner cannot disallow the certificate, or refuse to issue a patent thereon because the proof is not satisfactory to his mind, or because it is suggested to him that it is false. The law devolves the determination of that question on the register and receiver, (Rev. St. § 2263,) and it can only come before the commissioner on an appeal from their decision by a party to a contest before them.

When a certificate of purchase has been issued to a pre-emptor in due form, and no appeal has been taken from the decision or action of the register and receiver, the land described in the certificate becomes the property of the pre-emptor. He has the equitable title thereto, and has a right to the legal one as soon as the patent can issue in the due course of proceeding; and he can dispose of the

same, and pass his interest therein, as if the purchase had been made from a private person. *Carroll* v. *Safford*, 3 How. 460; *Myers* v. *Croft*, 13 Wall. 291; *Camp* v. *Smith*, 2 Minn. 155, (Gil. 131;) *Cornelius* v. *Kessel*, 58 Wis. 237; S. C. 16 N. W. Rep. 550; *Brill* v. *Stiles*, 35 Ill. 309; *Sillyman* v. *King*, 36 Iowa, 207; *Moyer* v. *McCullough*, 1 Ind. 339.

In *Carroll* v. *Safford* it was ruled that land held under a certificate of purchase from the United States land-office was subject to state taxation as the property of the purchaser. In delivering the opinion of the court, Mr. Justice McLean said:

"When the land was purchased and paid for it was no longer the property of the United States, but of the purchaser. He held it for a final certificate, which could no more be canceled by the United States than a patent. It is true, if the land had been previously sold by the United States or reserved from sale, the certificate or patent might be recalled by the United States, as having been issued through mistake. In this respect there is no difference between the certificate holder and the patentee."

In *Moore* v. *Robbins*, 96 U. S. 538, it was held that a patent, issued by the land department, acting within the scope of its authority, passes the legal title to the land, and all control of the executive department of the government over the title thereafter ceases; that if any wrong has been done to the United States, the courts of justice are open to it, as in the case of an individual, to have redress by cancellation of the patent or reconveyance of the land. But whether a final certificate or certificate of purchase, issued in due form to a pre-emptor or other purchaser of public land by the register and receiver of a local land-office, is within this rule, subject to the right of the commissioner or secretary to modify or set the same aside upon a direct appeal to either of them, the supreme court has not decided, that I am aware of. The cases of *Lytle* v. *Arkansas*, 9 How. 314, *Garland* v. *Wynn*, 20 How. 6, and *Harkness* v. *Underhill*, 1 Black, 316, have been cited and considered, but however they may bear on the question, they are not, in my judgment, decisive of it.

To my mind, the certificate of purchase, subject to the condition mentioned, is within the reason of the rule laid down in *Moore* v. *Robbins*, in the case of a patent. The issue of a patent or final conveyance on such a certificate is a mere ministerial act, of which the purchaser, in the case of private parties, might compel the performance. Several of the state courts have decided that the certificate of purchase, when issued in due form, for land subject to entry, is beyond the power of the commissioner, otherwise than on a direct appeal from the register and receiver. In *Perry* v. *O'Hanlon*, 11 Mo. 585, the supreme court of Missouri held that a cancellation of a pre-emption certificate by the commissioner was a nullity. To the same effect is the ruling in *Brill* v. *Stiles*, 35 Ill. 309; *Cornelius* v. *Kessel*, 58 Wis. 241; S. C. 16 N. W. Rep. 550.

The statement in the answer as to the time and manner of insti-

tuting the alleged contest with Webb seems purposely obscure. The hearing therein, before the register and receiver, appears to have been had in January, 1883; while it appears from a notice signed by the register of Webb's application to make final proof, addressed to Ewing at "Rio Vista, California," and annexed to a written brief filed by him herein, that he was living in California as late as August, 1882. So that instead of being "soon after," it must have been more than a year after the certificate was issued to Webb that Ewing returned to Oregon and applied for leave to contest the former's entry. But assuming, as I do, that the proceeding before the register and receiver was had on the direction of the commissioner, without the authority of law, the cancellation of Webb's certificate of purchase and Ewing's subsequent entry of the premises under the homestead law are mere nullities. This being so, the exceptions for impertinence are well taken. The matter embraced in them is altogether immaterial, and not a defense to the relief sought by the bill. Neither does it appear from Ewing's answer that the second or changed filing of December 4, 1876, was for the land in question. The allegation is that on that day, with the consent of the register and receiver, he changed his declaratory statement, but how much or wherein is not stated. In the opinion of the secretary, which is annexed to the answer as an exhibit, however, it crops out incidentally that the change consisted in throwing out the S. W. ¼ of the N. W. ¼ of the section, and adding thereto lots 6 and 7 of the same. Nothing definite can be ascertained from this without reference to the plat of the public survey of the section, from which it appears that the boundary line of the Umatilla reservation cuts off the south-east corner of it, leaving the S. E. ¼ of the S. E. ¼ a mere fraction containing 3.32 acres, and known as lot 6; and the N. E. ¼ of the S. E. ¼, also a fraction, containing 38.9 acres, and known as lot 7. Practically, then, the second or changed Ewing statement includes three of the four 40-acre tracts included in Webb's purchase, and lot 6 of the same section. Whether this was "a second declaration for another tract" within the prohibition contained in section 2261 of the Revised Statutes is a question. Certainly it was not for the same tract as the first filing, though not wholly for "another" or different one.

On the argument counsel for the plaintiff laid great stress on the fact, as he assumed it to be, that he was a purchaser in good faith for a valuable consideration, claiming that, as the defendant had not answered the allegation of the bill to that effect, it was admitted to be true. But such is not the rule in equity pleading, though it would be very convenient if it were so. An allegation in a bill which is neither admitted nor denied by the answer is still only an allegation, and must be proved before the plaintiff can have any relief based on it. If he wishes to prove it by the answer of the defendant, he can compel the latter to testify upon the point by excepting to the answer for insufficiency.

The exception made in section 2262 of the Revised Statutes, in favor of a *bona fide* purchase for a valuable consideration from a person holding a certificate of purchase under the pre-emption law, is only against the forfeiture of the land denounced by that section on account of the falsity of the oath thereby required of the settler as to his right to enter land under the pre-emption law, and his purpose in doing so. But in this case it was alleged that the pre-emptor never complied with the law as to residence, improvement, and cultivation, and that the certificate of purchase was issued to him upon false or insufficient proofs of these facts. To such a case section 2262 does not appear applicable. But at common law, where a party obtaining a conveyance of real property by a fraud practiced upon the grantor conveys the same to a third person, who buys in good faith and for a valuable consideration, the latter will hold the property purged of the fraud. *Fletcher* v. *Peck,* 6 Cranch, 133; *Somes* v. *Brewer,* 2 Pick. 184; *Deputy* v. *Stapleford,* 19 Cal. 302; 2 Story, Eq. Jur. § 1502; 2 Washb. Real Prop. 597. And in *U. S.* v. *Minor,* 5 Sup. Ct. Rep. 836, lately decided by the supreme court, it is said that when a person obtains a patent for land under the pre-emption law by "fraud and perjury, it is enough to hold that it conveys the legal title; and it would be going quite too far to say that it cannot be assailed by a proceeding in equity, and set aside as void if the fraud is proved *and there are no innocent purchasers for value.*"

But whether this rule is applicable to a purchase made from a preemptor after entry and before patent issues may be a question. Regarding the sale of the land, however, as completed when the proof of compliance with the law is made to the satisfaction of the agents of the vendor,—the register and receiver,—and the purchase price paid to them, my impression is that an innocent purchaser for a valuable consideration from the party having the certificate of purchase takes the land, and the right to the patent, purged of any fraud that may have been committed by his grantor in obtaining such certificate. Of course, where the invalidity of the certificate is apparent on its face or is a matter of law, of which all persons are presumed to have knowledge, the purchaser would take with notice of such invalidity, and be bound by it accordingly. But be this as it may, my conclusion is that a certificate of purchase issued in due form, in favor of a pre-emptor, for land subject to entry under the pre-emption law cannot be canceled or set aside by the land department for alleged fraud in obtaining it; and that in such case the government must seek redress in the courts, where the matter may be heard and determined according to the law applicable to the rights of individuals under like circumstances. The right of a party holding a certificate of purchase of public land, and that of his grantee, is a right in and to property of which neither of them can or ought to be deprived without due process of law.

The exceptions to the answer are allowed.