UNITED STATES *v.* FREYBERG and others.

(*Circuit Court, E. D. Wisconsin.* December, 1886.)

1. PUBLIC LANDS—CUTTING TIMBER—ENTRY OF HOMESTEAD—PROCURING PATENT.

One K. sold to defendants timber cut from the land that he had entered as a homestead, but for which he had not yet paid or procured the patent. After the commencement of an action by the government for the recovery of the timber, K. commuted his entry as provided by Rev. St. U. S. §§ 2301, 2259, and paid for the land, receiving the receipt therefor from the land-office. *Held,* that this proceeding made a completed purchase of the land, and so changed the *status* of the original entry as to deprive the United States of the right to recover for timber previously cut from the land.

2. SAME—RIGHT TO HOMESTEAD—GOVERNMENT AS TRUSTEE.

Where the right to a patent for land has become vested in a purchaser, the government holds the legal title in trust for the purchaser until the patent is issued.

*A. K. Delaney,* for the United States.

*G. W. Hazelton* and *Jenkins, Winkler, Fish & Smith,* for defendants.

DYER, J. This is a suit by the United States to recover the value of a quantity of timber cut by the defendants from lands which, on the twenty-first of November, 1883, were entered by one Klingenberg as a homestead. The cutting was done with the consent of the homesteader, who, at the time, was living on the land with his family. On the trial of the case, the jury found the following facts in the form of a special verdict:

"*First.* That the lands mentioned and described in the complaint were duly entered as a homestead by the witness, Christian Klingenberg, on the twenty-first day of November, 1883; that the said entry was made in good faith, and that he has since continuously occupied the same, and lived thereon with his family, as a homestead, and improved a part thereof for agricultural purposes.

"*Second.* That the defendants herein, with the consent of, and by agree-

ment with, the said Christian Klingenberg, and for a pecuniary consideration paid to him, cut and removed from said land 210,668 feet of pine timber, board measure, during the years 1884 and 1885, of the value of $1,363.25; that the stumpage value of said timber was one dollar per thousand feet, and the manufactured value of said timber, at the place of manufacture, was $7.50 for common lumber, and $3.50 for culls, per thousand feet; that one-quarter of said lumber was culls, and that said timber was not so cut and removed for the purpose of improving and cultivating the land, but for the purpose of sale, and to enable Klingenberg to realize means to pay for supplies for him-self and family in connection with the occupancy of the land.

"*Third.* That on the fifteenth day of January, 1886, and after the com-mencement of this action, the homesteader, Klingenberg, made the necessary proofs of entry and occupancy under the law, and paid the money required by the commutation act, to-wit, one and 25-100 dollars per acre, and the legal fees, to the receiver of the land-office at Menasha, Wisconsin, who forwarded said proofs to the proper department at Washington, but no patent has been issued to said homesteader."

Upon the facts so found, the question is, should judgment be entered against the defendants for the value of the timber in question? In *U. S.* v. *Lane*, 19 Fed. Rep. 910, this court held that one who has entered upon public land according to law, for the purpose of claiming a home-stead, and is residing thereon in good faith, and improving it for agricult-ural purposes, is entitled to cut so much timber from the land as is neces-sary for his actual improvements, and no more. The rule that a home-stead entry, although it gives the party entering the land certain rights of occupation, does not so convey title, or divest the United States of prop-erty in it, as to authorize him to cut the timber, except where the culti-vation of the land is the primary object of the cutting, was also enunci-ated and enforced in *U. S.* v. *Stores*, 14 Fed. Rep. 824, and in the *Tim-ber Cases*, 11 Fed. Rep. 81. See, also, *U. S.* v. *Smith*, 11 Fed. Rep. 487. Counsel seemed disposed, on the argument, to combat these rul-ings, but it must be regarded as the settled law that a homestead claim-ant, in occupancy of lands which he has entered, but which he has not paid for, has no right to cut the timber growing thereon, except for the purpose of improving the land, so that it may be profitably used for ag-ricultural purposes, or may be better adapted to convenient occupation. If the timber is severed for the purposes of sale alone, then the cutting is wrongful, and the timber, when cut, becomes the absolute property of the United States. In such case the cutting becomes waste, and in ac-cordance with well-settled principles the owner of the fee may seize the timber cut, arrest it by replevin, or proceed in trover for its conversion. *U. S.* v. *Cook*, 19 Wall. 591.

If, therefore, there were no other facts in this case than such as are stated in the first and second paragraphs of the special verdict, judgment would have to go in favor of the United States. But it appears that after the commencement of this suit the homesteader commuted his en-try, as he was permitted by law to do, (sections 2301, 2259, Rev. St. U. S.,) by paying in full, to the officers in charge of the land-office and authorized to receive the same, the minimum price at which the public lands are sold, namely, $1.25 per acre, for the land which he had orig-

inally entered and was occupying with his family as a homestead, together with the legal fees incident to the proceeding. The proofs offered on the trial showed a full compliance with the law in this respect, that the purchase money was accepted and retained by the receiver at the land-office, that he gave to the purchaser a receipt therefor, and that the proofs were forwarded to the department at Washington, and have not been returned, but that no patent has been issued to Klingenberg. I am of the opinion that this proceeding, which made a completed purchase of, and payment for, the land, so changed the character or *status* of the original entry as to deprive the United States of the right of recovery for the timber previously cut from the land. Upon the consummation of such purchase, Klingenberg became the owner of the equitable title to the land, and acquired a right to the legal title as soon as the patent can issue in the due course of proceeding. *Smith* v. *Ewing*, 23 Fed. Rep. 744. The land ceased to be the subject of sale by the government. It was no longer its property; it holds the legal title only in trust for the purchaser. *Defieback* v. *Hawke*, 115 U. S. 392, 6 Sup. Ct. Rep. 95; *Carroll* v. *Safford*, 3 How. 441; *Cornelius* v. *Kessel*, 58 Wis. 237, 16 N. W. Rep. 550. In *Simmons* v. *Wagner*, 101 U. S. 260, it was held that one in possession of public lands under a certificate of the register that he had paid for the same, without a patent, can successfully defend against an action of ejectment to recover the possession by the holder of a patent issued upon a subsequent purchase of the land as part of the public domain. In the opinion of the court it is said that "it is well settled that when lands have once been sold by the United States, and the purchase money paid, the lands sold are segregated from the public domain, and are no longer subject to entry. A subsequent sale and grant of the same lands to another person would be absolutely null and void so long as the first sale continued in force. Where the right to a patent has once become vested in a purchaser of public lands, it is equivalent, so far as the government is concerned, to a patent actually issued. The execution and delivery of the patent, after the right to it has become complete, are the mere ministerial acts of the officers charged with that duty." In *Cornelius* v. *Kessel, supra,* it was decided that the rights of the purchaser are the same whether he has received the register's final certificate or only the receiver's receipt.

Upon this state of the law, when applied to the facts as found by the jury, it would seem that the United States ought not to recover. The consummation of the purchase, and the payment of the purchase money in full, must be held to relate back to the original entry, and consequently to protect the occupant and purchaser from liability for acts done on the land while he was holding under his homestead entry. And the protection thus resulting to him, of course inures to the benefit of his vendees. No other conclusion seems consonant with justice. As suggested on the argument, the case is quite analogous in principle to that of a purchase of land by one person from another under contract. In violation of the contract, the purchaser, being in possession, commits waste. But when the purchase money is due he pays it in full, and be-

comes entitled to a deed. Could the vendor in such case, after receiving and retaining the purchase money, recover for the waste committed while the contract was yet unperformed? Or could he, after parting with his entire interest in the land by accepting payment, yet maintain a suit previously begun, and recover damages therein for such waste? If not, it is difficult to see how the government is entitled to recover in the case at bar.

The only ground urged by the attorney for the United States in opposition to these views was the fact that the patent has not yet been issued, and, therefore, that the legal title has not become vested in the purchaser. But this contention, as we have seen, is not tenable, in view of the legal proposition laid down in cases that have been cited, that the government now holds the legal title merely in trust for the purchaser, whose right to a patent has become vested, and is equivalent, so far as the government is concerned, to a patent actually issued.

Let judgment be entered on the verdict in favor of the defendants.