## Case No. 16,691.

### UNITED STATES v. WILCOX.

### [4 Blatchf. 385.] [1]

Circuit Court. N. D. New York. Oct. 18, 1859.

FRAUDS AGAINST U. S.—TRANSMISSION OF FORGED PAPERS TO PENSION OFFICE—CLAIMS FOR BOUNTY LANDS—INDICTMENT.

1. Under the 1st section of the act of March 3, 1823 (3 Stat. 771), it is a felony to transmit to the pension office forged papers in support of a claim for bounty land under an act of congress.

[Cited in Fidelity Safe-Deposit & Trust Co. v. Armstrong, 35 Fed. 566.]

[Cited in U. S. v. Spaulding, 3 Dak. 85, 13 N. W. 359, 538.]

2. The word "claim," in that section, is not limited to a demand for money, but extends to such a claim for bounty land.

3. An indictment for transmitting such forged papers, need not show that the forged papers stated all the facts necessary to be established in order to entitle the party to the bounty land, provided it shows that they were transmitted for the purpose of obtaining the allowance of the claim for the bounty land applied for.

This was a demurrer to an indictment. The indictment contained two counts, each founded upon the 1st section of the act of congress of March 3, 1823 (3 Stat. 771), which provides, that if any person or persons "shall transmit to, or present at. or cause or procure to be transmitted to, or presented at, any office or officer of the government of the United States, any deed, power of attorney, order, certificate, receipt, or other writing, in support of, or in relation to, any account or claim, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited, every such person shall be deemed and adjudged, guilty of felony," &c. The first count set forth, that "Samuel C. Albro and Morris Wilcox, late of Whitestown, in the county of Oneida and state of New York, heretofore, to wit, on the tenth day of August, in the year of our Lord one thousand eight hundred and fifty-eight, at Whitestown, in the county of Oneida, in the

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

Northern district aforesaid, and within the jurisdiction of this court, did feloniously transmit to, and present at, the office of the commissioner of pensions, of the department of the interior, of the United States of America, a certain false, forged and counterfeit writing, in support of and in relation to a claim for bounty land against the United States, which purported to be the genuine and true declaration and affidavit of Henry West, and made out and subscribed and sworn to for the purpose of obtaining the bounty land to which the said Henry West was or might be entitled, under the act of congress approved the third day of March, in the year of our Lord one thousand eight hundred and fifty-five, and attached thereto and connected therewith was what purported to be the affidavits of Charles H. Williamson and Charles Bowers, and the certificate of said Morris Wilcox, a justice of the peace within and for the county of Oneida, which said false, forged and counterfeited writing is in words and figures as follows: 'Declaration of an officer or soldier who has not received bounty land. State of New York, County of Oneida, ss. On this tenth day of August, A. D. 1858, before me, Morris Wilcox, a justice of the peace within and for the county and state aforesaid, personally appeared Henry West, aged 74 years, a resident of Newport, Herkimer county, in the state of New York, who, being sworn according to law, declares that he is the identical Henry West who was a musician in the company commanded by Captain Benjamin Minor, in the 12th regiment of detached militia, commanded by John S. Vandalson, in the war with Great Britain, declared by the United States on the 18th day of June, 1812; that he entered the service at Schenectady, New York, on or about the first day of September, A. D. 1812, for the term of six months, and continued in actual service in said war, for the term of about six months, and was honorably discharged at Sackett's Harbor, New York, on or about the first day of March, A. D. 1813. He makes this declaration for the purpose of obtaining the bounty land to which he may be entitled under the "Act in addition to certain acts granting bounty land to certain officers and soldiers who have been engaged in the military service of the United States," passed March 3d, 1855. He also declares, that he has not received a warrant for bounty land under this or any other act of congress, nor made any application therefor. Henry West. We, Charles H. Williamson, and Charles Bowers, residents of Whitestown, county and state aforesaid, upon our oaths declare, that the foregoing declaration was signed and acknowledged by Henry West in our presence, and that we believe, from the appearance and statements of the applicant, that he is the identical person he represents himself to be. Signatures of witnesses: Charles H. Williamson, Charles Bowers. The foregoing declaration and affidavit was sworn to and subscribed before me, the day and year above written; and I certify, that I know the affiants to be credible persons, that the claimant is the person he represents himself to be, and that I have no interest in this claim. Morris Wilcox, Justice of the Peace'—which writing was transmitted to, and presented at, the said office of the commissioner of pensions, by said Samuel C. Albro and Morris Wilcox, with intent to defraud the said United States, they, the said Samuel C. Albro and Morris Wilcox, then and there knowing the same to be false, forged and counterfeited, contrary to the form of the statute in such case made and provided, and against the peace of the said United States of America and their dignity." The second count was, in form and substance, the same as the first count, except that the charge in the second count was for causing and procuring the papers referred to, to be transmitted to and presented at the pension office, instead of transmitting and presenting them, as charged in the first count.

HALL, District Judge. The questions raised by the demurrer to the indictment are substantially the same in regard to each count. The papers referred to, and set forth, in the two counts are the same, and, in respect to each, it was argued, that the word "claim," as used in the statute, can have reference only to a demand for money, and does not embrace a claim for bounty land. It is conceded that, if the word "claim" stood alone, it might apply to a demand for bounty land, but that, as used in the statute, in connection with the word "account," it is entirely inapplicable to a claim of the kind mentioned in the indictment.

There can be no doubt that the word "claim," standing by itself, and unrestricted by the use of the word "account," and the other language of the section in which it is found, and with which it is connected, would embrace a claim for bounty land, as well as a claim for money; and I do not see that the connection in which it is used, or the other parts of the section in which it is found, have, in any measure, restricted its ordinary meaning, or indicated an intention not to embrace within the statute a claim for bounty land, as well as one for a pension, or for a sum of money due under a contract with the government. Indeed, I think the difference in the terms used in the different portions of this section, and the addition of the word "claim," in that portion of the section upon which this indictment is founded, afford strong evidence that claims of this description are intended to be embraced. The first part of the section is, by its terms, expressly limited to acts done for the purpose of obtaining or receiving, or of enabling others to obtain or receive, "any sum or sums of money;" but, in the portion of the section under which this indictment has been found, the language is changed, and the transmitting, &c., of any

false, altered, forged or counterfeited writing, "in support of, or in relation to, any account or claim," is declared criminal. There is no evidence of an intention to restrict this language, so as to make this portion of the statute applicable only to a mere money claim, and I do not doubt, that the statute extends to such a case as that mentioned in the indictment. The careful addition, after the word "account," of a term of a much broader signification, and the use of the very comprehensive language which immediately precedes those terms, satisfy me that it was the intention of congress to embrace all claims, whether for land or money, and that the construction insisted upon by the defendant cannot be maintained.

It was also insisted, that the indictment was bad, because the claim or declaration of the supposed applicant, set out in full in each count of the indictment, does not state all the facts necessary to be established in order to entitle the party to bounty land under the act therein referred to. I cannot think that this objection is well taken. The declaration states facts necessary to be stated in order to obtain the examination of rolls, records, and other proofs in the pension office, which may show that the applicant is entitled to the bounty land claimed, and is believed to be in the general form required at the pension office; but it does not state specifically that the applicant was mustered or called into the service of the United States, or paid by the United States, nor does it state other facts necessary to be established by record proof or otherwise, before the claim could be properly allowed. Such defects, and further proof, when the records are insufficient, are frequently supplied by supplementary declarations or affidavits, and the omission to make a false or forged declaration perfect in those respects, does not, in my judgment, change the case. If transmitted to the pension office for the purpose of obtaining the allowance of the claim for the bounty land applied for, it is not the less transmitted in relation to and in support of a claim against the government, because it happens to be insufficient or defective, whether it be sent under the supposition that it is in itself sufficient, or with a knowledge of its insufficiency, and with the intention to supply its defects by supplementary or additional papers, or under the expectation that the pension office records will furnish all the other evidence required. Besides, I am inclined to think that the declaration set out in the indictment would have been held sufficient by the pension office, if the rolls of the company or regiment therein referred to, in possession of the proper officer at Washington, had established the fact that the applicant had served as stated, and had been mustered into the service of the United States, and paid by its officers for such service as would entitle him to the bounty land desired. If the construction insisted upon by the learned counsel for the defendant should be adopted, it would be easy to defraud the United States, without danger of conviction, under this statute, because each declaration, and every subsequent paper separately transmitted, might be, in itself, insufficient, whilst the papers transmitted at different times, might, when taken together, fully establish the claim made.

The demurrer to the indictment must be overruled, but the defendant will be allowed to plead at the present term.