## JONES *v.* UNITED STATES.

*Circuit Court, D. Oregon.* July 16, 1888.)

COURTS—FEDERAL CIRCUIT—PUBLIC LANDS—CLAIMS TO A PATENT.

The word "claim," as used in the act of 1887, (24 St. 505,) giving this court jurisdiction to hear and determine certain claims against the United States, includes a claim by a purchaser or his assignee of timber land under the act of 1878, (20 St. 89,) to have a patent issue for the same.

*(Syllabus by the Court.)*

Action to Compel Issue of Patent.

*W. Scott Beebe* and *James K. Kelly,* for plaintiff.

*Lewis L. McArthur,* for defendant.

DEADY, J. This suit is brought under the act of March 3, 1887, (24 St. 505,) entitled, "An act to provide for the bringing of suits against the government of the United States," to compel the issue of a patent to the S. E. ¼ of section 30, in township 7 N., of range 3 W., of the Wallamet meridian.

It is alleged in the petition that the petitioner resides in Multnomah county, Or., and that the land in question is situated in Columbia county, and is of a value not less than $1,000, nor more than $10,000; that prior to June 21, 1883, said land was surveyed and subject to entry and purchase under the act of June 3, 1878, for the sale of timber lands in Oregon and other Pacific states, (20 St. 89,) "and was not fit for agriculture, but was chiefly valuable for the timber thereon;" that on said June 21st one John R. Frierson, having complied with the requirements of said act, and the regulations concerning the acquisition of land thereunder, "so as to entitle himself to pay for the same, and claim a patent therefor from the United States, did on said day, at the United States land-office in Oregon City, Or., purchase said land from the defendant, and did then and there pay to the receiver of said land-office the price thereof, to-wit, the sum of $400, or $2.50 per acre; and that the receiver gave said Frierson "a certificate or receipt" for said money as "being in full" for said land.

That on June 26, 1883, said Frierson, for a valuable consideration, sold, assigned, and transferred said certificate and receipt, and all his right, title, and interest therein and to said property, to the petitioner, and on the same day, in consideration of such sale, said Frierson executed and delivered to the petitioner a good and sufficient deed, with warranty, of said land; that the defendant has kept and retained said $400, and its servants, whose duty it is to execute and deliver the patent for said land, refuse to do so, and deny the right of the petitioner to have the same, or to any interest in said land, whereby her title thereto is clouded, and the full enjoyment of the property prevented.

The prayer of the petition is that the court will decree that a patent for said land issue to said Frierson, and that all his interest and estate therein by virtue of said sale and patent inure to the petitioner, according to the conveyance to her by said Frierson.

Due service of the petition was made on the district attorney and the attorney general, as provided in section 6 of the act of 1887, and thereupon the district attorney appeared for the defendant, and demurred to the petition.

Several causes of demurrer are stated, but they are all in effect a denial that the case or the claim of the petitioner is within the purview of the act of 1887; and on the argument of the same the point was made and relied on that the "claim" against the United States, of which the act gives this court "jurisdiction to hear and determine," is one for money only.

And, first, the act of 1878 (section 1) provides that the surveyed public lands in Oregon and other Pacific states, with certain exceptions, not necessary now to mention, "valuable chiefly for timber, but not fit for cultivation, * * * may be sold to citizens of the United States, * * * in quantities not exceeding 160 acres to any one person, * * * at the minimum price of $2.50 per acre;" that (section 2) any person desiring to avail himself of the provisions of the act "shall file with the register of the proper district a written statement in duplicate, one of which is to be transmitted to the general land-office, designating by legal subdivisions the particular tract of land he desires to purchase," and setting forth therein the other particulars concerning the character of the land, and the purpose of the applicant in acquiring the same, necessary to bring the application within the statute, "which statement must be verified by the oath of the applicant." If such oath is false, the affiant is liable to punishment for perjury, "and shall forfeit the money which he may have paid for said lands, and all right and title to the same; and any grant or conveyance which he may have made, except in the hands of a *bona fide* purchaser, shall be null and void."

The act further provides (section 3) that notice of the application shall be given for 60 days, when, if no adverse claim is filed, "the applicant shall furnish to the register of the land-office satisfactory evidence" of the publication of the notice, and the character and condition of the land, when, on payment of "the purchase money," he "may be permitted to enter" the same; "and on the transmission to the general land-office of the papers and the testimony in the case, a patent shall issue thereon."

But any person having a valid claim to any portion of such land "may object in writing to the issuance of a patent" thereto, which objection shall be heard and "determined by the officers of the land-office, subject to appeal, as in other land cases."

An applicant for land under this act becomes the purchaser thereof when he makes the prescribed proof to the satisfaction of the register, and pays the prescribed price therefor. When the certificate of purchase is issued to the applicant the land described therein becomes his property. The bare legal title is all that remains in the vendor in trust for the vendee; and if it was the case of a private person, a court of equity would compel him to perform his part of the contract, by executing and delivering to the vendee the proper conveyance thereof.

If it is claimed that the certificate was fraudulently or illegally ob-

tained, the land department cannot arbitrarily, or at all, cancel the same or set it aside. The certificate, and the right of the purchaser thereunder, is property, of which he cannot be deprived without due process of law; and mere fiat law, by whomsoever pronounced, can have no such effect. Redress must be had in the courts where such matters are properly cognizable, and where they may be heard and determined according to the law of the land—the law applicable to the rights and obligations of private persons under like circumstances. *Smith* v. *Ewing*, 11 Sawy. 56, 23 Fed. Rep. 741.

On the facts stated in the complaint, Frierson was the lawful purchaser of the premises from the United States, and is entitled to a patent therefor, and the petitioner has succeeded to all his rights.

This being so, does the act of 1887, permitting the United States to be sued in this court on "all claims founded" as therein specified, include this claim or case?

The act provides (section 1) that "the court of claims shall have jurisdiction to hear and determine * * * all claims founded on the constitution of the United States or any law of congress, except for pensions, or upon any regulation of an executive department, or upon any contract, expressed or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable," with certain exceptions not material here to state. The act (section 2) also gives the district and circuit courts of the United States concurrent jurisdiction with the court of claims in all such cases; provided, in case of the former, "the amount of the claim" does not exceed $1,000, and in case of the latter exceeds that sum, and does not exceed $10,000.

A suit under the act (section 5) is commenced by filing a verified petition with the clerk of the proper court in the district where the plaintiff resides. "The petition must set forth the full name and residence of the plaintiff, the nature of his claim, and a succinct statement of the facts upon which the claim is based, the money or any other thing claimed, or the damages sought to be recovered, and praying the court for a judgment or decree upon the facts and law;" and a copy of the petition must be served on the district attorney, and another mailed to the attorney general of the United States.

This act should not be strictly construed. It is both beneficent and remedial in its character. In the progress of society from barbarism to civilization, the redress of wrongs, and the enforcement of rights, by the prescribed methods and measures of the law, is an important element, and, in the end, a prime result. Then the administration of justice not only includes redress against private persons, but by the individual against society,—the one against the many. Then, under some proper prudential restraints as to costs and the like, every citizen of the republic who has a claim against the government, instead of being compelled to seek relief from year to year from a distant, indifferent, overgrown, and

overburdened congress, or department, will be allowed to seek redress in the ordinary courts of the country in the district where he resides.

The old superstition, born of the tribal and feudal systems, that regarded the right of the subject to call the chief or sovereign to answer, and do him right in a court of justice, as incompatible with the dignity of the ruler, has no proper place in either the form or idea of our government, and should not be allowed to come between the citizen and his right to redress against the same. See Mr. Justice MILLER in *U. S.* v. *Lee*, 106 U. S. 204, 1 Sup. Ct. Rep. 240.

The organization of the court of claims at Washington, in 1885, (10 St. 612,) was a signal movement in this direction.

By this act that court was given jurisdiction to "hear and determine all claims founded upon any law of congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States."

Thereafter, from time to time, jurisdiction was given the court over particular cases; but the general jurisdiction remained unchanged, until the passage of the act of 1887, which materially enlarges it.

The establishment of a court of claims at Washington, although a long step in advance in the administration of justice between the United States and the people thereof, fell far short of what was necessary to that end. In *Bonner* v. *U. S.*, 9 Wall. 156, the supreme court held that the court of claims had no jurisdiction of a suit founded on equitable considerations merely.

This is remedied by the act of 1887, which, in effect, authorized a suit to be maintained against the United States either at law, in equity, or admiralty.

But the great advance in the act of 1887 is the provision allowing the person entitled to sue thereunder, in case his claim does not exceed $10,000 in value, to bring his suit in the national court for the district in which he resides.

In a country covering so large an area as the United States, in the great majority of cases it amounts to a denial of justice to require a suitor to bring his suit in a court so far removed from his residence and resources as the capital of the nation. In the court of his locality he can conduct his case with much less expense, with the advice and aid of attorneys of the vicinage, whom he knows and trusts, and who appreciate him and his cause, and in a tribunal imbued with the local knowledge, often so essential to a correct understanding and determination of a legal controversy.

Considering, for these reasons, that the act conferring jurisdiction on this court to hear and determine "all claims * * * founded on any contract * * * with the government of the United States," is a highly remedial and beneficent one in its general purpose and scope, I proceed to consider whether it includes such a "claim" or cause of suit against the United States as the petitioner is shown to have.

On behalf of the defendant it is insisted that the word "claim," as used in this act, means a money demand and no other,—a claim on

which a judgment or decree can be given for money, or damages payable in money.

It may be admitted that the term is more often used in this sense than any other, simply because the great majority of claims which arise out of the intercourse and business of the country are in fact pecuniary ones. But the general and natural sense of the term is not thus limited. *Gray* v. *Palmer*, 9 Cal. 636. One may have a "claim" upon or against another for a chattel or land, as well as money or damages. The act of 1878, in providing for the sale of timber land, uses the expressions, "valid claims," "nature of his claim," "*bona fide* claim," and "adverse claim," as signifying an interest in or right to such land.

In *Stowel* v. *Zouch*, Plow. 359, a "claim" is defined as "a challenge by a man of the propriety or ownership of a thing which he has not in possession, but which is wrongfully detained from him." And this definition is adopted by Bouvier. Verbum, "Claim."

In *Prigg* v. *Pennsylvania*, 16 Pet. 615, the term is defined thus: "It is, in a just and judicial sense, a demand of some matter, as of right, made by one person on another, to do or forbear to do some act or thing as a matter of duty."

Worcester defines it as follows: "A demand as of right; a challenge of ownership, to lay claim to anything."

In none of these definitions is the meaning of the word limited to mere money demands. And any of them is broad enough to include any demand or right which may be the subject of legal or equitable cognizance in a court of justice. As was said by the supreme court in *Prigg* v. *Pennsylvania*, *supra*, it includes a demand made of right by one person on another to do some act as a matter of duty. And that is this case exactly. The petitioner, as a matter of right, demands that the defendant, as a matter of duty or legal obligation, comply with its contract under the law under which this land was sold to her assignor, Frierson, and issue a patent for the same.

This is her claim against the United States. It arises on a contract with the government thereof,—the contract of sale of June 21, 1883; and in its nature, is enforceable by a suit in equity in this court for a specific performance of the same. And this brings the petitioner within the act of 1887, which gives her the right to sue the United States on any claim arising on contract, by a suit in equity, as "if the United States were suable,"—which must mean, as if the United States was a private person.

But section 5 of the act shows affirmatively that the right of action or suit given by it is not confined to money claims or demands, but includes "any other thing claimed." While I am not prepared to say that a claim or right to have a patent issue to a tract of land, is a claim or right to a "thing," because the same is not *in esse*, but only *in posse*, yet the use of the word in this connection plainly shows that congress did not understand that it was legislating about claims for money only; and that a party having a claim founded upon any law of congress or contract with the government of the United States to a chattel or land in the possession of

the government thereof, is within the statute. In *U. S.* v. *Wilcox*, 4 Blatchf. 385, it was held in a criminal action that the word "claim," as used in the act of March 3, 1823, (3 St. 771,) making it a crime to transmit any forged writing to any officer of the government in support of "any account or claim" with intent to defraud the United States, includes a claim for bounty land. In *Minick* v. *City of Troy*, 83 N. Y. 514, the term, as used in the charter of the city of Troy, which provided that no action should be brought against the city for an injury to person or property, unless the "claim" on which the suit is brought was first presented to the comptroller for audit, was held to be the equivalent of the phrase, "cause of action."

In my judgment, any person who has a claim against the United States founded on a contract with the government thereof, on which an action at law or a suit in equity or admiralty might be maintained against a private person, is within the purview of the statute, and may proceed thereunder for the relief to which he is entitled, be it money, damages, possession of chattels or land, or a specific performance of a contract in relation thereto.

This, so far as I know, is the first case under this statute, and as it is understood that there are a number of like cases in this district, it is desirable that the construction of the statute should be settled by the supreme court at an early day.

It is not likely that patents are withheld by the land department in these cases without some cause which is though sufficient to overcome the apparent right of the purchaser. But the right of the purchaser cannot be disposed of in this one-sided, arbitrary way. If the United States will not bring a suit to cancel and set aside the sale to the petitioner's assignor, on the alleged invalidity thereof, it may in this suit by the petitioner for the patent set up the same as a defense thereto, and have the question lawfully decided.

The demurrer to the petition is overruled.