Church, J.
These three cases came before the District Court upon applications for writs of mandamus, to compel the probate *350 judge of Pennington county to execute and deliver to tlie relators respectively, deeds for certain lands in Napid City, claimed by them under the provisions of the territorial town-site law of 1881, chapter 135.
In the first two cases named alternative writs were first granted; in the case of Marcena L. Martin the matter came up on motion for peremptory writ in the first instance. Motions to quash the alternative writs were overruled; issues of fact were joined in all the cases, and they were tried to the Court without a jury, and judgment rendered in each case for the relators, and peremptory writs awarded. Motions for new trials were made and denied.
Numerous errors are assigned as grounds for reversal, only one of which, however, we shall consider since it involves a determination of the propriety of the remedy adopted in these cases, and in the view we have taken of it disposes of the matter.
By section 2387, of the Nevised Statutes of the United States, whenever certain classes of public lands have been settled upon and occupied as á town site, it is made lawful, in case such town is not incorporated, for the judge of the county court in which such town is situated, to enter at, the proper land office, and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of such trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof to be conducted under such regulations as may be prescribed by the legislative authority of the state or territory in which the same may be situated.
In pursuance of the authority thus conferred the legislature of this territory in 1881 passed what is known as the Town-site Act, (laws of 1881, chapter 135,) providing for the entry and disposal of *351 lands for town site purposes. Section 4 of this act prescribes that the probate judge holding title to any such lands in trust under the act of Congress, £i shall, subject to the provisions of this ££ act, by a good and sufficient deed of conveyance, grant and con- “ vey the title to each and every block, lot, share or parcel of the ££ same to the person, persons, associations or corporations who ££ shall occupy or possess or be entitled to the right of possession ££ or occupancy thereof, according to the several rights and inter- >£ ests of the respective claimants, in or to the same, as they ex- ££ isted in law or equity at the time of the entry of such lands, or ££ to the heirs or assigns of such claimants.”
Provision is then made for the ascertainment by the probate judge of the expenses of entry, survey, etc., and the assessment thereof upon the lots.
Section 7 then prescribes the method by which claims to lots shall be presented to the judge, viz: By a statement in writing containing an accurate description of the lot claimed, the specific right, interest or estate claimed, the character and value of the improvements thereon, the character and extent of the occupation and possession, and any other matter or thing illustrating or supporting such claimant’s rights to a deed of the tract so described. This statement to be verified and presented to the probate judge
Section 9 provides for the determination of adverse claims by suit in the District Court.
Section 10 prescribes the extent of ground that may be claimed by any one claimant in a single tract, which, unless the claimant or his grantors were in the actual and peaceable possession of the same prior to the entry of the town site, and had improved the same, and was still in the occupaucy thereof, might equal but not exceed two acres.
*352 Section 12 provides that at the expiration of a certain time therein mentioned, the probate judge shall proceed to award the lots, and for that purpose “ shall examine each and every claim, “ read proofs filed, and hear additional testimony, if deemed advis- “ able; and if the claim shall he found to co'nvply with the ¡provi- “ sions of this act, and no adverse claim and notice of contest shall “ have been filed, shall proceed to make such claimant a good and “ sufficient deed of conveyance for such lot or lots or parcels so “ claimed.”
On June 6, 1878, application was made to the proper office by the then probate judge of Pennington county, to enter the town site of Rapid City for patent under the act of Congress and the then existing laws of the territory. This application was contested, but after a hearing in the local land office was allowed, and on appeal to the General Land Office and again to the Secretary of the Interior this decision was affirmed, the application allowed, and the entry completed July 8, 1881. Subsequently these relators filed their claims for certain large tracts of land within the town site, basing such claims respectively upon an alleged actual and peaceable possession and improvement prior to July 8, 1881, but not prior to June 6,1878; and it would seem from the record that whatever rights the relators had in the premises accrued in the interval between these dates. Each of the tracts claimed was between thirty and forty acres in extent.
These claims were examined in their order by the probate judge and were by him rejected. Demand was made upon him to execute deeds of conveyance to the relators for the lots claimed by them respectively, and was refused. These demands were . then put in writing, and upon presentation to the respondent were endorsed by him, “ Demand refused; non-conformity to town-site law.”
*353 The only question which we have deemed it necessary to consider is, whether mandamus was the appropriate remedy for the relators? and we think this question must be determined in the* negative.
The District Court held that the duties of the respondent were purely ministerial, and that he was bound to execute deeds to the relators for the tracts occupied by them respectively, and in this we think the court erred.
An examination of the statute will show that in passing upon the claims presented the respondent was required to exercise functions clearly of a j udicial character. He was called upon to determine whether the character and extent of the occupancy and improvement were such as to entitle the claimants to the tracts claimed. He was to determine when that occupancy had its legal beginning, and whether this was prior or subsequent to the entry of the town site; and he was empowered to hear additional testimony, if deemed advisable, and finally to determine whether or not ■ the claims complied with the provisions of the act. In the exercise of the duty thus imposed upon him the respondent found in terms that the claims of the relators did not conform to the law, and we do not think his decision can be reviewed by mandamus.
Of course we will not be understood as holding that these duties derive any judicial character from the fact that the respondent was the judge of the probate court; that circumstance merely designates him as the proper trustee in this case. Had the city of Rapid been incorporated at the time of the town-site entry the corporate authorities would have been the trustees. The duties of the trustee derive their character Rom the provisions of the town-site act.
In the case of Francis v. Common Council of Troy, 78 N. Y., 33, the Court of Appeals after declaring that the writ of man- *354 damus is not a remedy for an erronious decision, say: u This prin-u ciple applies to every case where the duty, the performance of “ which is sought to be compelled, is, in its nature, judicial, or “ involves the exercise of judicial power or discretion irrespective « of the general character of the officer or body to which it is ad- “ dressed. * * Where a subordinate body is vested with power “ to determine a question of fact, the duty is judicial; and though it can be compelled by mandamus to determine the fact, it can- ££ not be directed to decide in a particular way, however clearly it “ be made to appear what the decision ought to be.”
The general rule is so well stated by Mr. High (Ex. Leg. Bern., Sec. 4:2,) that we here reproduce it: “We come next to the con- ££ sideration of a fundamental rule, underlying the entire jurisdic- <£ tion by mandamus, and especially applicable in determining the ££ limits to the exercise of the jurisdiction over public officers. “ That rule is, that in all matters requiring the exercise of official “ judgment, or resting in the sound discretion of the person to '££ whom a duty is confided bylaw, mandamus will not lie, either to ££ control the exercise of that discretion, or to determine upon the ££ decision which shall be finally given. And wherever public ££ officers are vested with powers of a discretionary nature as to the ££ performance of any official duty, or in reaching a given result of ££ official action, they are required to exercise any degree of judg- ££ ment. While it is proper by mandamus to set them in motion, ££ and to require their action upon the matters officiallyentrusted ££ to their judgment and discretion, the courts will in no manner ££ interfere with the exercise of their discretion, nor attempt by ££ mandamus to control or dictate the judgment to be given. In- ££ deed, so jealous are the courts of encroaching in any manner ££ upon the discretionary powers of public officers, that if any rea- ££ sonable doubt exists as to the question of discretion or want of “ discretion they will hesitate to interfere, preferring rather to ex- *355 •“ tend the benefit of the doubt in favor of the officer.” See, also, sections 34, 174 and 278, of the same work
To the same effect, also, are Howland v. Eldridge, 43 N. Y., 456; Francis v. Common Council of Troy, 78 N. Y., 33; Gibbs v. Coms. of Hampden Co., 19 Pick., 298; Chase v. Blackstone Canal Co., 10 Pick., 244; U. S. v. Seaman, 17 How., (U. S.) 225. The last mentioned case was one in which a mandamus was sought to compel the superintendent of public printing to deliver certain papers to the printer of the Senate' to be printed. Whether these papers should be delivered to the relator or to the printer of the House involved the determination of two questions;
First. — Whether they really constitute part of a document already assigned to the printer of the House; and
Second. — In which House the order to print was first passed.
The Supreme Court, without passing upon these questions, say : ££ The rule to be gathered from all of these cases is too well settled u to need further discussion. It cannot issue in a ease where “ judgment and discretion are to be exercised by the officer; and ££ it can be granted only where the act required to be done is ££ merely ministerial, and the relator without any other adequate ££ remedy.”
££ Now it is evident that this case is not one in which the superintendent had nothing to do but obey the order of a superior “ authority. He had inquiries to make before he could execute ££ the authority he possessed. He must examine evidence; that ££ is to say, he must ascertain in which house the order to print ££ was first passed, * * * and after he had made up his mind ££ upon this fact it was still necessary to examine into the usage “ and practice of Congress, * * and to make up his mind ££ whether separate communications upon the same subject or on ££ different subjects, from the same office, when made at differ- *356 « ent times were, according to the usages and practice of Congress, “ described as one document, or as different documents in printing « and publishing their proceedings. He was obliged, therefore, “ to examine evidence and form his judgment before he acted; “ and whenever that is to be done, it is not a case for mandamus.”'
We cannot distinguish this case in legal principle from the one before us. See, also, Secretary v. McGarrohan, 9 Wall., 298, and cases cited.
It is worthy of remark- that by the thirteenth section of the act of 1881, it is provided that any lots which shall remain unclaimed after the expiration of the time limited for filing claims, shall be devoted to the school fund of the towns, and no method seems to be provided by which this school fund may be protected against improper claims which may be presented for lots in the town site, except the exercise of a wise and careful discretion by the trustee in passing upon all claims filed.
The judgment of the District Court in all these cases must be reversed, and the peremptory writs of mandamus heretofore awarded by that court, set aside.
Edgerton, C. J., dissenting.