FARNHAM *et al.* v. COLMAN, JUSTICE OF THE PEACE.

1. The circuit court cannot review by mandamus the action of a committing magistrate in refusing to punish a witness for contempt.

2. The refusal of a committing magistrate to compel the prosecuting attor-

ney to produce, on preliminary examination and in obedience to a subpœna duces tecum, dying declarations reduced to writing, does not violate the constitutional right of accused to meet the witnesses face to face and to have compulsory process to obtain witnesses in his behalf.

3. The refusal to compel production of such writing does not impair the right given to accused by Rev. Code Cr. Proc. § 141, to produce his witnesses after the axamination of the state's witnesses is closed.

4. Rev. Code Cr. Proc. §§ 140, 512, requires the committing magistrate to issue a subpœna for witnesses and papers or documents required by defendant. Section 518 makes disobedience of a subpœna, or a refusal to be sworn or to testify, punishable by the court or magistrate as for a criminal contempt, as provided in the Code of Civil Procedure. Section 495 of such Code prescribes a fine as the punishment for contempt where a witness fails to attend in obedience to a subpœna, and authorizes a punishment by fine or imprisonment in other cases. Held, that a committing magistrate has no power to punish as for a contempt the refusal of a witness to produce documents called for by a subpœna duces tecum.

(Opinion filed April 25, 1905.)

Appeal from circuit court, Lawrence county; Hon. W. G. RICE, Judge.

Mandamus proceedings by Eli P. Farnham and another against Nathan Colman, as justice of the peace within and for Lawrence county. From an order quashing the alternative writ, plaintiffs appeal. Affirmed.

*Chambers Kellar, Jas. G. Stanley, Polley & Stewart,* and *Ivan W. Goodner,* for appellants.

*William H. Parker,* State's Attorney, *R. C. Hayes,* the Attorney General, and *Aubrey Lawrence,* for respondent.

FULLER, J. This appeal is from an order of the circuit court quashing an alternative writ of mandamus issued there-

from against a justice of the peace engaged in conducting a preliminary examination under an information charging appellants with the crime of murder. In the alternative form the writ commanded the respondent magistrate to compel the state's attorney, William H. Parker, by punishment for contempt, to produce at the hearing certain statements or dying declarations pursuant to a previously served subpœna duces tecum which the witness, though called, sworn, and examined, had refused to obey. It appears from the petition that the cross-examination of one of the witnesses for the state disclosed that Richard Galvin, the victim of the homicide, after all hope of life was abandoned, and with the realization of immediately impending death, had made a dying declaration which was taken in shorthand by two competent persons, one of whom was the state's attorney's stenographer, and the same, after being typewritten, was signed by such declarant, whose death occurred soon afterward. It is conceded that the state's attorney, when called as a witness, was, and now is, in actual possession of, and wholly able to produce, both the signed statement of Richard Galvin, since deceased, and the short hand notes taken by the stenographers; that counsel for appellants urgently requested respondent to compel their production by punishing the witness for contempt, and that such magistrate refused to resort to such procedure. If there are any other essential facts, they may be stated as well in connection with the principles and usages of law applicable to a case of this character. Nor need anything be said concerning the propriety of resorting to the extraordinary remedy of mandamus to require a public prosecutor to produce before a committing magistrate evidence on behalf of the accused after all

the witnesses for the state have been sworn and examined. Were it to be assumed that the respondent had the same authority to fine or imprison the state's attorney for contempt that is given him to discharge from custody or hold appellants to answer for the crime of murder, it would of necessity follow that his power to refuse to impose the penalty for contempt is equally ample, and, having thus decided in this instance, there could be no interference on the part of the circuit court by means of mandamus. In other words, had the magistrate power to punish the witness, he had power to refuse to do so, and mandamus from a court having no supervisory jurisdiction does not lie to review the action of such inferior tribunal Territory ex rel Gramburg v. Nowlin, 3 Dak. 349, 20 N. W. 430; Ex parte Burtis, 103 U. S. 238; Matlock et al. v. Smith, 96 Tex. 211, 71 S. W. 956; Montgomery et al. v. Palmer, 59 N. W. 148; sections 153 to 158, inclusive, High, Ex. Rem. In derogation of the common law, section 141 of the Revised Code of Criminal Procedure provides that "when the examination of the witnesses on the part of the state is closed any witness the defendant may produce must be sworn and examined," and counsel for appellants contend that under the statute and the constitution their clients were deprived of an absolute and unqualified right to the production of the evidence demanded. Formerly all inquiry at preliminary examinations might be confined to the prosecution, and, as a matter of strict legal right, the accused was not entitled to offer evidence in his own behalf; but in some jurisdictions it seems to have been considered entirely proper to permit him to make an unsworn statement and have his witnesses examined under oath. Consistent with the theory that the constitutional right of the accused

"to meet the witnesses against him face to face, and to have compulsory process served for obtaining witnesses in his behalf," does not apply to a preliminary examination, Mr. Justice WHITE makes the following observation: "The contention at bar that, because there had been no preliminary examination of the accused, he was thereby deprived of his constitutional guaranty to be confronted by the witnesses, by mere statement, demonstrates its error."   Goldsby v. United States, (U. S.) 16 Sup. Ct. 216.   In the recent case of State v. Belding, 43 Or. 95, 71 Pac. 330, Chief Justice MOORE, in delivering the opinion of that court, by which a judgment inflicting the death penalty is affirmed, employs the following language: "When a defendant in a criminal action is examined before a magistrate, the state is expected to produce sufficient testimony to prove that a crime has been committed, and also to make a prima facie showing that the person accused thereof is apparently guilty.   By this means the defendant, without offering any testimony in exculpation, is generally enabled to ascertain the nature of the indictment likely to be returned against him, and also to anticipate the extent and character of the testimony that will probably be produced in support of the charge; thus enabling him intelligently to prepare for his defense.   *   *   *   The guaranty of the organic law of the state that the accused in a criminal prosecution shall have the right to meet the witnesses face to face is satisfied when at some stage of the trial the defendant is confronted with the witnesses and given an opportunity to cross-examine them."

While it is clear that the refusal of the magistrate to compel obedience to the subpœna duces tecum did violence to no constitutional guaranty, and that mandamus from the circuit

court will never lie to reverse the judicial action of such offi-
cers, we prefer to rest this decision upon the well-grounded
principle that inferior tribunals are without inherent power to
punish for contempt, and that the extraordinary jurisdiction
which the writ of mandamus commanded respondent to exer-
cise is not given by statute.   In holding that a United States
court commissioner, sitting as a committing magistrate, has
no power under the laws of Minnesota to punish a witness for
contempt, Judge NELSON says:   "It is claimed by counsel that
the power to examine gives the right to subpoena witnesses, and,
as an incident to it, the power to enforce obedience to the sub-
poena by arrest and punishment for contempt.   To arrest and
punish for contempt is the highest exercise of judicial power,
and belongs to judges of courts of record or superior courts.
Where jurisdiction exists there can be no review.   A pardon
by the executive is in most cases the mode of release.   This
power is not, and never has been, an incident to the mere ex-
ercise of judicial function, and such power cannot be upheld
upon inferences and implications, but must be expressly con-
ferred by law.   *   *   *   But there is authority of the courts of
the United States directly upon this question.   In re Perkins,
on habeas corpus before Circuit Court Judge GRESHAM, the
particular question raised here was decided.   Judge GRESHAM
said, 'It is a stretch of language to say that the punishment of
a witness for contempt, and by a commissioner, is a necessary
part of the usual mode of process against offenders, or essen-
tial to the exercise of any power expressly conferred on him
by the federal law.'   So, in Ex parte Doll [7 Phila. 595, Fed.
Cas. No. 3,968], before the late United States Judge CADWAL-
ADER, Doll had been arrested on complaint made by an officer of

the internal revenue for failing to appear and testify in rela-
tion to his income. At the examination before the commis-
sioner, an order was made that 'Doll produce his books before
the commissioner, or be committed for contempt.' On re-
fusal to comply, he was committed. Upon the hearing the
power of the commissioner to arrest and punish for contempt
was raised. The judge, in discharging the prisoner for the ir-
regular proceeding of the commissioner, inter alia, said that
'he very much doubted even the power of Congress to invest a
commissioner with the authority in a proceeding originally
instituted before him to summarily commit a citizen for an al-
leged contempt. This was an exercise of the judicial power of
the United States, which, under the Constitution, could not be
intrusted to an officer appointed and holding his office in the
manner in which these commissioners were appointed and held
their offices.' In the celebrated case of Kilbourn v. Thomp-
son, involving the question of the power of the Congress to
arrest and punish a witness for contempt (103 U, S. 182,) in
refusing to answer questions before a committee of the House,
Justice MILLER, speaking for the court, among other things,
said: 'The Constitution says that no person shall be deprived
of his life, liberty, or property without due process of law; and
it has been repeatedly held by the United States Supreme
Court that this means a trial in which the rights of the party
shall be decided by a court of justice appointed by law, and
governed by the rules of law previously established.' " In re
Mason, (D. C.), 43 Fed. 510. Although the recorder of the city
of Hoboken, N. J., had all the powers that justices of the
peace throughout the state possessed as committing magis-
trates, the court, in discharging on habeas corpus a prisoner

found guilty of contempt, employs the following language: "To punish by a commitment for contempt is a power belonging only to judges of certain courts, and does not arise from the mere exercise of judicial functions. The power is great, and its exercise without review, where there is jurisdiction, and hence our duty to be careful not to extend it beyond the recognized bounds of the common law. The recorder did not commit in default of sureties to keep the peace, or to answer before the oyer or sessions, but his commitment was in execution by way of punishment. That power, so far as it may be exercised by judicial officers, is an incident to a court, belonging alike to courts of civil and criminal jurisdiction, but not extending, at common law, below such as are courts of record recognized in the common law. The general doctrine of the English law is that all courts of record may fine or imprison for contempts in the face of the court. * * * And as early as Griesley's Case [8 Coke 38] it was resolved, in the Common Pleas, that courts which are not of record cannot impose a fine or commit any to prison for contempts. A power to fine or imprison in such cases, although necessary for the proper discharge of the duties of a court not of an inferior jurisdiction, and for the maintenance of its independence and dignity, should not belong to all persons, bodies, or tribunals who may have a judicial duty to perform. The common law wisely did not recognize it in courts below those of record; and we would be doing violence to the liberty of the citizen to encourage its existence in any of our own courts, except that, in their very nature, or from analogy to their English models, or in their constitution, are courts of record, with jurisdictions not beneath the character of those so treated in the common law."

Matter of Peter Kerrigan, 33 N. J. Law 344. The headnote, fully supported by the opinion, in the matter of George N. Farnham, 8 Mich. 89, is as follows: "A magistrate having jurisdiction, under chapter 194 of the Compiled Laws, to examine and commit for trial, or to hold to bail, persons charged with crimes not cognizable before a justice of the peace, has no power to commit a witness for refusing to testify on such examination. He has no powers except such as are expressly conferred by this chapter."

Sections 140 and 512 of the Revised Code of Criminal Procedure make it obligatory on the part of the magistrate to issue a subpœna for any witness required by the defendant, and, if any books, papers, or documents are needed, such subpœna must direct the witness to produce them at the preliminary hearing. Section 518 is as follows: "Disobedience to a subpœna, or a refusal to be sworn or to testify may be punished by the court or magistrate, as for a criminal contempt, in the manner provided in the Code of Civil Procedure." Section 495 of such Code, which provides the means of producing witnesses, is the provision of the Civil Code fixing the penalty for contempt, and reads as follows: "The punishment for the said contempt shall be as follows: When the witness fails to attend, in obedience to the subpœna, except in case of a demand and failure to pay his fees, the court or officer may fine the witness in a sum not exceeding fifty dollars. In other cases the court or officer may fine a witness in a sum not exceeding fifty dollars nor less than five dollars, or may imprison him in the county jail, there to remain until he shall submit to be sworn, testify or give his deposition." Now, the writ granted and subsequently quashed by the circuit court

was not a mandamus to compel the witness to ''submit to be sworn, testify, or give his deposition," but, according to its recitals, to "compel the said witness, William H. Parker, by punishment for contempt, to produce at said hearing all of said statements, dying declarations, and stenographic notes," and the statute has provided no penalty for disobedience that can be exercised by the examining magistrate.

It follows that the alternative writ of mandamus was properly quashed and the order appealed from is affirmed.

CORSON, P. J. (concurring specially). I concur in the conclusion that the order of the circuit court should be affirmed on the last ground stated in the opinion, namely, that our statute providing for the punishment of contempts has not provided for punishing as for a contempt a refusal of a witness to produce documents called for under a subpœna duces tecum issued by a committing magistrate. The respondent, therefore, in denying plaintiff's motion to punish the witness for his refusal to produce the statement described in the alternative writ of mandamus by proceedings for contempt, did not violate any duty imposed upon him by the statute or the common law.